# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADWAY 104, LLC d/b/a CAFE DU SOLEIL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AXA FINANCIAL, INC.; XL INSURANCE AMERICA, INC.,<br><br><br>Defendants. | Case No. 1:20-cv-03813<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1.  Breach of Contract<br>2.  Breach of the Duty of Good Faith and Fair Dealing<br>3.  Unjust Enrichment |

Plaintiff Broadway 104, LLC doing business as Cafe Du Soleil ("Plaintiff"), individually and on behalf of all others similarly situated, alleges for this Class Action Complaint against Defendants AXA Financial, Inc. and XL Insurance America, Inc. (collectively, "Defendants") as follows:

## NATURE OF THE CASE

1. This is a class action arising from Defendants' denial of insurance coverage for Plaintiff's business closure due to the COVID-19 pandemic.

2. Plaintiff, like many other businesses throughout the United States, is a small business devastated by the impact of the pandemic. Plaintiff operated as Cafe Du Soleil, a family-owned restaurant in New York, New York, until the pandemic

affected New York City and the rest of the nation beginning in early March 2020. Unable to maintain its business operations—a sit-down, family restaurant almost entirely reliant on in-person dining—Plaintiff suffered extensive loss of business profits and had to close the restaurant down.

3.     Also like many small businesses, Plaintiff needed protection against unforeseen events that could affect its operations and profits and invested in an "all risk" commercial insurance policy and regularly paid monthly premiums to Defendants for the policy (the "Policy"). After being devastated by the impact of COVID-19 on their business, Plaintiff promptly sought relief via the Policy by filing a claim with Defendants to cover its losses.

4.     As explicitly indicated in the Policy, Plaintiff expected coverage for business income losses arising from interruption of business, including coverage of extra expenses incurred to restore his business and thus minimize his loss of business income. In addition, the Policy provided for business income losses caused by civil authority prohibiting access to his restaurant. Further, the Policy provided for extended business income losses even after operations could resume.

5.     Instead, Defendants swiftly denied Plaintiff's claim. In denying Plaintiff's claim, Defendants wrongfully asserted that Plaintiff's losses were not "direct physical loss of or damage" to its business. Defendants also wrongfully asserted that language in an endorsement to the Policy purporting to exclude claims arising from any "virus,

bacterium or other microorganism" was applicable to the global COVID-19 pandemic.

6.      On behalf of all other businesses insured by Defendants whose claims Defendants similarly denied, Plaintiff alleges Defendants have breached their contracts with their insureds and have been unjustly enriched.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed Classes have more than 100 members, the Classes contain at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

8.      The Court has personal jurisdiction over Defendants because Defendants are authorized to and conduct substantial business in New York and within this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to these claims occurred in this District.

## PARTIES

10.     Plaintiff Broadway 104, LLC is a New York limited liability company doing business as Cafe Du Soleil, with its principal place of business in New York, New York.

11.     Defendant Axa Financial, Inc. is a national property-casualty insurance company with its principal place of business in New York, New York.

12.     Defendant XL Insurance America, Inc. is a national property-casualty insurance company with its principal place of business in Stamford, Connecticut.

13.     Defendants are both subsidiaries of Axa S.A., a French multinational insurance firm.

## FACTUAL ALLEGATIONS

14.     To protect its restaurant and the business income generated from its operation, Plaintiff invested in the Policy from Defendants. In exchange for Defendants' coverage, Plaintiff regularly paid monthly premiums to Defendants to maintain the Policy. The Policy was effective on June 25, 2019 and is set to expire on June 25, 2020. Cafe Du Soleil is in Manhattan, New York City, and is the business and property insured under the Policy.

15.     The Policy is what is known as an "all-risk" commercial insurance policy, which means that all risks of loss are covered unless specifically excluded in the Policy. In the Policy, Defendant explicitly agreed to pay for all losses caused by "Covered Causes of Loss," which Defendant defines as "direct physical loss" unless the loss is excluded under the Policy.

16.     The Policy provides for loss of business income through what is commonly known as business interruption coverage: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

17.     Defendant defines "Business Income" as the net profit the business would have earned if operations were not suspended, plus any continuing normal operating expenses, including payroll. Defendant defines "suspension" as, *inter alia*, a slowdown or cessation of the insured's business activities.

18.     Defendant defines "Period of restoration" as the period of time that begins 72 hours after the physical loss or damage to the property and ending when the property is repaired or when business resumes at a new location, whichever is earlier.

19.     The Policy also provides extra expense coverage: "Extra Expense means necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."

20.     In addition, the Policy provides extended business income coverage,  in which Defendant promises to cover business losses up to 60 days after operations would have resumed under certain conditions.

21.     Further, the Policy specifically provides "Civil Authority" coverage: "When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises."

22.     The State of New York, and in particular the New York City Metro Area, has been the epicenter of the COVID-19 epidemic in the United States since early March 2020.

23.     On March 1, 2020, the first case of COVID-19 in New York was confirmed, a health care worker living in Manhattan.

24.     On March 3, 2020, a second case was confirmed in New Rochelle, New York, a lawyer who worked in Midtown Manhattan and reportedly had interacted with many other people while infected, ultimately leading to dozens of additional confirmed COVID-19 infections.

25.     On March 7, 2020, Governor Andrew Cuomo declared a state of emergency after nearly 90 cases have been confirmed in the state.

26.     On March 11, 2020, Governor Cuomo announced that New York's City and State Universities would be closed and classes would be moved to online-based systems the following week.

27.     On March 12, 2020, Governor Cuomo announced restrictions on mass gatherings—including the closure of all Broadway theaters that day—and restricting nursing home visits to only those that were medically necessary.

28.     On March 14, 2020, the first two COVID-19 fatalities in the state were reported.

29.     On March 15, 2020, Governor Cuomo announced that New York City schools would close the following day.

30.     On March 17, 2020, New York City Mayor Bill de Blasio closed all schools, bars, and restaurants in the city, except for takeout and delivery. At that point, over 800 cases of COVID-19 in New York City had been confirmed.

31.     On March 22, 2020, Governor Cuomo implemented a stay-at-home order, dubbed the "PAUSE" order, which included a mandate that all non-essential workers work from home. Most recently, on May 7, 2020, Governor Cuomo extended the PAUSE order through June 6, 2020.

32.     New York State and, in particular, New York City and the surrounding metro area have been more hard-hit by COVID-19 than any other area of the world. As of the date of this filing, nearly 350,000 cases of infection and over 27,000 deaths have been reported.

33.     Due to the statewide and citywide restrictions on movement and operation of non-essential businesses, Plaintiff suffered significant loss of business income, as patrons were initially urged to avoid and, ultimately, prohibited to dine in its restaurant. By mid-March 2020, Plaintiff was forced to suspend business operations at the restaurant and made a claim to Defendants for loss of business income. Defendants denied Plaintiff's claim in a letter dated April 3, 2020.

34.     As a result of the suspension of their business, Plaintiff has sustained significant financial losses and is not sure when—or even if—it will be able to operate the restaurant again.

35.     Defendants' denial of Plaintiff's claim heavily relied on an endorsement to the Policy entitled, "Exclusion of Loss Due to Virus or Bacteria" which states, "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Further, Defendants' denial letter asserts that Plaintiff's loss of business income was not covered because it was not a "direct physical damage" to the business property.

36.     Contrary to Defendants' assertions, Plaintiff's loss of business profits should have been covered by the Policy because the COVID-19 pandemic is such a devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the "virus" exclusion in the Policy endorsement, and Plaintiff's loss of business profits constituted direct damage to its business property. The current global catastrophe is much different from, for example, an episode of food poisoning affecting several restaurant patrons. The COVID-19 pandemic is much closer to a natural disaster than a "loss due to virus or bacteria."

37.     Under the Policy, Defendants promised to cover the type of business losses and expenses Plaintiff has suffered and was obligated to pay for them. But in a breach of its contractual obligations, Defendants denied Plaintiff's claim and have failed to pay for Plaintiff's losses and expenses.

38.     Upon information belief, Defendants have failed to pay for similar business losses and expenses suffered by hundreds, if not thousands, of other insureds holding policies that are, in all material respects, identical to the Policy.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff seeks relief in its individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following class:

> All persons residing in the United States who made insurance claims with Defendants for loss of business income and/or expenses to minimize the suspension of business due to COVID-19 and/or actions of any civil authority in response to COVID-19, which Defendants denied or have otherwise failed to acknowledge, accept as covered losses or expenses, or pay for the covered losses or expenses.

40.     Excluded from the Class are Defendants, as well as their officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendants. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after it has had an opportunity to conduct discovery.

41.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many hundreds, if not thousands, of businesses are insured by Defendants with policies substantively identical to Plaintiff's Policy.

42.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.     Whether Defendants breached their insurance policy agreements with Plaintiff and the Class by denying valid claims for coverage made under the terms of those agreements;

b.     Whether Defendants breached the implied covenant of good faith and fair dealing implied in their policy agreements;

c.     Whether Defendants have a uniform policy to interpret their agreements terms and conditions in a way so that Defendants would not have to honor their policy agreements with Plaintif and the Class;

d.     Whether Defendants have been unjustly enriched by retaining insurance premiums and failing to honor claims resulting from COVID-19; and

e.     Whether Plaintiff and the Class are entitled to equitable and declaratory relief.

43.     Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of other Class members. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendants' unlawful conduct.

44.     Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

45.     Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

46.     Plaintiff hereby re-alleges every factual allegation contained above.

47.     Defendants have entered into contracts with Plaintiff and the Class under which Defendants agreed to provide insurance coverage to Plaintiff and the Class pursuant to the terms of their commercial policy agreements.

48.     Plaintiff and the Class performed all their obligations under these contracts.

49.     Defendants breached their contracts with Plaintiff and the Class by improperly denying coverage by mischaracterizing the language of their policy agreements to exclude Plaintiff's and the Class's claims.

50.     Plaintiff and the Class have sustained damages as a result of Defendants'

breaches of contract in an amount to be proven at trial.

## COUNT II
### Breach of the Duty of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

51.     Plaintiff hereby re-alleges every factual allegation contained above.

52.     Good faith is an element of the contract that Plaintiff and the Class

entered into with Defendants in obtaining insurance coverage. Whether by common

law or statute, all such contracts impose upon each party a duty of good faith and fair

dealing. Good faith and fair dealing, in connection with executing contracts and

discharging performance and other duties according to their terms, means preserving

the spirit—not merely the letter—of the bargain.

53.     Put differently, the parties to a contract are mutually obligated to comply

with the substance of their contract in addition to its form. Evading the spirit of the

bargain and abusing the power to specify terms constitute examples of bad faith in the

performance of contracts.

54.     Plaintiff and the Class performed all their obligations under their implied

contracts with Defendants.

55.     Defendants breached the covenant of good faith and fair dealing by

purposefully mischaracterizing provisions of their insurance coverage agreements so

as to not honor their contractual duties to Plaintiff and the Class under those

agreements.

56.     Plaintiff and the Class have sustained damages as a result of Defendants'

breaches of the covenant of good faith and fair dealing in an amount to be proven at

trial.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

57.     Plaintiff hereby re-alleges every factual allegation contained above.

58.     This claim is pleaded in the alternative to the previous counts alleged.

59.     Plaintiff and the Class conferred a benefit on Defendants by paying

Defendants money in exchange for insurance coverage.

60.     The circumstances are such that it would be unjust and inequitable for

Defendants to retain the benefit that they unjustly received from Plaintiff and the Class

now that Defendants have wrongfully denied Plaintiff's and the Class's claims for

business losses and expenses due to the COVID-19 pandemic.

61.     Plaintiff and the Class are entitled to recover damages from Defendants

as a result of Defendants' unjust enrichment in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of

the Class proposed in this Complaint, respectfully requests that the Court enter

judgment in its favor and against Defendants, as follows:

A.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendants to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.      Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

E.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

F.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

G.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Dated:  May 15, 2020

/s/ Tina Wolfson
Tina Wolfson
twolfson@ahdootwolfson.com
Bradley K. King
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
125 Maiden Lane, Suite 5C
New York, New York 10038
Tel: (917) 336-0171
Fax: (917) 336-0177

*Counsel for Plaintiff and the Putative Class*