UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
BROADWAY 104, LLC d/b/a CAFÉ DU
SOLEIL,

                          Plaintiff,                           20-cv-3813 (PKC)

          -against-                                            OPINION
                                                               AND ORDER

XL INSURANCE AMERICA, INC.,

                          Defendant.
---------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Broadway 104, LLC, doing business as Café du Soleil (the "Café"),

operates a small Manhattan restaurant that has suffered financial losses during the Covid-19

pandemic and suspended operations following state and municipal shutdown orders.  Defendant

XL Insurance America, Inc. ("XL") issued the Café a commercial insurance policy that provided

for business interruption coverage in the event of direct physical loss of or damage to its

property.  In April 2020, the Café submitted a written claim to XL, seeking coverage for business

losses arising out of the pandemic and the government shutdown orders.  XL disclaimed

coverage and asserted that the Café's policy did not cover the claimed losses.

          The Café's First Amended Complaint (the "Complaint") brings claims for breach

of contract and breach of the duty of good faith and fair dealing, and also seeks a declaration that

XL wrongfully disclaimed coverage.  (Docket # 34.)  The claims are brought on behalf of a

putative class.  XL moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.

          Because the Complaint does not plausibly allege that the Café's suffered a

covered loss under the XL policy, the motion to dismiss will be granted.

BACKGROUND.

       The Café is a small, family-owned restaurant in New York City.  (Compl't ¶ 2.)

It is a sit-down restaurant that primarily serves in-person customers.  (Compl't ¶ 2.)

       The Complaint recounts the events of March 2020, when New York City (the

"City") became the "epicenter" of Covid-19 in the United States.  (Compl't ¶¶ 21-30.)  It states

that on March 17, 2020, all of the City's bars and restaurants were closed by order of the mayor,

with the exception of takeout and delivery orders.  (Compl't ¶ 29.)  On March 22, 2020,

Governor Andrew Cuomo implemented a stay-at-home order, which applied to non-essential

businesses and workers and remained in place for months.  (Compl't ¶ 30.)

       XL issued Commercial Property Policy number PHK-0951383-00 (the "Policy")

to plaintiff.  (Compl't ¶ 12; Gonzalez Dec. Ex. A.)  The Policy was effective from June 25, 2019

to June 25, 2020.  (Id.)  Several provisions of the Policy are relevant to the Café's claims for

relief.  The Policy included coverage for the loss of "Business Income" and stated in part:

> We will pay for the actual loss of Business Income you sustain due
> to the necessary "suspension" of your "operations" during the
> "period of restoration".  The "suspension" must be caused by direct
> physical loss of or damage to property at premises which are
> described in the Declarations and for which a Business Income
> Limit Of Insurance is shown in the Declarations.  The loss or
> damage must be caused by or result from a Covered Cause of Loss.

(Compl't ¶ 15; Gonzalez Dec. Ex. A at p. 49 of 162.)  It also provided that XL "will pay for

direct physical loss of or damage to Covered Property at the premises described in the

Declarations caused by or resulting from any Covered Cause of Loss."  (Gonzalez Dec. Ex. A at

p. 33 of 162.)  "Covered Causes of Loss" is defined as "direct physical loss unless the loss is

excluded or limited in this policy."  (Id. at p. 75 of 162.)  The Policy included a coverage

provision stating that XL "will pay for the actual loss of Business Income you sustain and

necessary Extra Expense caused by action of civil authority that prohibits access to the described premises" under certain specified circumstances.  (Compl't ¶ 20; Gonzalez Dec. Ex. A at p. 50 of 162.)  An exclusion to the Policy headed "NEW YORK – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" (the "Virus Exclusion") stated as follows:  "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (Compl't ¶ 35 & Gonzalez Dec. Ex. A at p. 66 of 162.)

The Complaint alleges that due to restrictions adopted by state and local authorities that were intended to mitigate the spread of Covid-19, the Café "suffered a direct physical loss of use of its restaurant and resulting significant loss of business income . . . ." (Compl't ¶ 33.)  It alleges that "[b]y mid-March, 2020, Plaintiff was forced to suspend business operations at the restaurant . . . ."  (Compl't ¶ 33.)

The Café submitted a claim to XL seeking coverage for the loss of business income, and XL denied coverage in a letter dated April 3, 2020.  (Compl't ¶ 33.)  The Complaint alleges that XL "heavily relied" on the Virus Exclusion, and that XL also asserted that the Café's lost business income was not covered because such loss was not a direct physical loss or damage to business property.  (Compl't ¶ 35.)

The Café asserts that its lost revenue "should have been covered by the Policy because the COVID-19 pandemic is such a devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the 'virus' exclusion in the Policy endorsement . . . ."  (Compl't ¶ 36.)  It also asserts that its business closure was not the direct result of Covid-19 contamination, but of the virus's presence in the surrounding area and of closures mandated by civil authorities.  (Compl't ¶¶ 36, 38.)  The Complaint asserts that XL's

reliance on the Virus Exclusion is contrary to the exclusion's text and purpose.  (Compl't ¶¶ 38-41.)

The Complaint brings three causes of action.  First, it asserts breach of contract, and alleges that XL wrongfully disclaimed coverage based on mischaracterizations of the Policy.  (Compl't ¶¶ 49-53.)  Second, it asserts breach of a duty of god faith and fair dealing, and alleges that XL has acted in bad faith and evaded "the spirit of the bargain."  (Compl't ¶¶ 54-59.)  Third, it seeks a declaration that XL is obligated to insure the Café because its business was restricted due to "civil authority business closures."  (Compl't ¶¶ 60-66.)  Subject matter jurisdiction is premised on the minimal diversity requirement of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  (Compl't ¶¶ 7-9.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

A complaint is "'deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated

by reference, are integral to the complaint.'" Cohen v. Rosicki, Rosicki & Assocs., P.C., 897

F.3d 75, 80 (2d Cir. 2018) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d

Cir. 2011)).  The Court may therefore consider such documents, including those submitted by a

defendant, as part of a Rule 12(b)(6) motion without converting the motion into one for summary

judgment.  Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 565-66 (2d Cir. 2006).  In an insurance

coverage dispute, a court adjudicating a motion to dismiss may properly consider a policy

referenced in the complaint.  See, e.g., New Image Roller Dome, Inc. v. Travelers Indem. Co. of

Illinois, 310 Fed. App'x 431, 432 (2d Cir. 2009)

DISCUSSION.

> I.     The Complaint Does Not Plausibly Allege that the Café Suffered a "Direct
>        Physical Loss" of Property.

"In determining a dispute over insurance coverage, [courts] first look to the

language of the policy."  Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co., 28 N.Y.3d

675, 681 (2017) (quotation marks omitted).  "Insurance contracts are governed by the general

rules of contract interpretation.   When resolving disputes concerning the scope of coverage,

[courts] look to the specific language in the relevant insurance policies."  Chen v. Ins. Co. of the

State of Pennsylvania, 36 N.Y.3d 133, 138 (2020).  "The language of a policy, when clear and

unambiguous, must be given its plain and ordinary meaning."  Id.  "Insurance policies must be

construed in a way that affords a fair meaning to all of the language employed by the parties in

the contract and leaves no provision without force and effect."  Selective Ins. Co. of Am. v. Cty.

of Rensselaer, 26 N.Y.3d 649, 655 (2016) (quotation marks and alterations omitted).

The Policy provides in relevant part:  "We will pay for the actual loss of Business

Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of

restoration'.  The 'suspension' must be caused by direct physical loss of or damage to property at

premises . . . .  The loss or damage must be caused by or result from a Covered Cause of Loss."

(Gonzalez Dec. Ex. A at p. 49 of 162.)  Thus, under the unambiguous terms of the Policy, the

parties agreed that XL would provide coverage for lost income during the suspension of

operations, but only if that suspension was "caused by direct physical loss of or damage to

property at premises . . . ."  (Id.)

The Café urges that the phrase "direct physical loss" should be broadly construed

to include the deprivation of property access, explaining that the disjunctive "or" distinguishes

"direct physical loss" from the concept of "damage."  Citing definitions from dictionary.com, the

Café notes that "loss" is defined to mean "failure to keep, have, or get" and "the state of being

deprived of or of being without something that one has."  (Opp. Mem. at 5.)  It urges that the

term "direct physical loss" is at least ambiguous, thereby making its claims for relief plausible.

The Café's argument ignores the adjectives "direct" and "physical" that precede

the word "loss."  The phrase "direct physical loss" describes tangible loss and cannot reasonably

be read to encompass a regulatory restriction against certain uses.  Further, the Café essentially

reads the word "property" out of the relevant language.  It is true that the Policy distinguishes

"loss" from "damage," but both terms are applied to the word "property," as reflected by the

prepositions "of" and "to."  The Policy provides for coverage when the insured suffers "direct

physical loss of . . . property" or "damage to property" on the premises.  The parties did not

agree to coverage in the event that the Café suspends operations due to "loss" in a generalized

sense, but due to the direct physical loss of property.

Additional provisions of the Policy are consistent with this construction.  The

definition of "Business Income" states that XL "will pay for the actual loss of Business Income

you sustain due to the necessary 'suspension' of your 'operations' during the 'period of

restoration.'"  (Gonzalez Dec. Ex. A at p. 49 of 162.)  The "period of restoration" terminates the earlier of when "the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality," or when business resumes at a new permanent location.  (Id. at p. 57 of 162.)  Coverage for the loss of "Business Income" is therefore directly related to the time required to restore physically damaged property.

This definition of "direct physical loss" is consistent with authorities that have considered identical or near-identical language.  See, e.g., Roundabout Theatre Co. v. Cont'l Cas. Co., 302 A.D.2d 1, 7 (1st Dep't 2002) ("the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property."); Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd., 2021 WL 1034259, at *6 (S.D.N.Y. Mar. 18, 2021) ("Under New York law, it is unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and (2) insurance provisions that cover business interruption 'caused by direct physical loss of or physical damage to property' provide coverage only where the insured's property suffers direct physical damage.") (Lehrburger, M.J.) (quotation marks omitted); Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) ("the great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss.") (Koeltl, J.); DeMoura v. Cont'l Cas. Co., 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property.") (Garaufis, J.); Soundview Cinemas Inc. v. Great Am. Ins. Grp., 71 Misc. 3d 493, 507 (N.Y. Sup. Ct. Nassau

Cnty. 2021) ("While the Court is sympathetic to the economic consequences resulting from the closure of Plaintiff's movie theater, the Court concurs with the majority view that loss of use of the Premises due to COVID-19 related government orders does not constitute 'direct physical loss of or damage to the property' that would trigger Business Income coverage under the Policy.").

The Complaint does not allege that the Café suffered a "direct physical loss" of property that would provide for business interruption coverage under the Policy.  The Court therefore concludes that the Café has not plausibly alleged a covered loss.  Because the breach of contract claim and claim for declaratory judgment are premised on the allegedly improper denial of coverage, Counts I and III will be dismissed.

II.    The Café Has Not Plausibly Alleged Coverage Pursuant to the Policy's Civil Authority Provision.

The Policy also provides for coverage of lost business income in the event that a civil authority prohibits the insured's access to the premises due to property damage in the immediately surrounding area (the "Civil Authority Provision").  (Gonzalez Dec. Ex. A at p. 50 of 162.)  This provision states in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken

> to enable a civil authority to have unimpeded access to the damaged
> property.

(Id.)

The Café asserts that because its closure was "prompted [by] the state's civil authority orders to shutdown dining in Plaintiff's restaurant," XL has a contractual obligation to pay for the resulting loss.  (Compl't ¶¶ 36-38, 62.)

First, the Complaint does not plausibly allege a covered loss under the Civil Authority Provision because it does not allege that authorities prohibited the Café from accessing the premises.  It alleges the existence of "civil authority mandating non-essential business closures due to COVID-19 infections and property contamination in New York City and the surrounding area" and states that the Café closed due to "the state's civil authority orders to shutdown dining in Plaintiff's restaurant."  (Compl't ¶¶ 5, 36.)  But the Civil Authority provision provides coverage for lost business income when a civil authority "prohibits access to the described premises . . . ."  The Complaint does not describe the prohibition of access, but the prohibition of "dining in Plaintiff's restaurant."  See, e.g., Food for Thought Caterers, 2021 WL 860345, at *6-7 (coverage provision did not apply where "no civil authority order denied complete access"); Mangia Rest. Corp. v. Utica First Ins. Co., 2021 WL 1705760, at *5 (N.Y. Sup. Ct. Queens Cnty. Mar. 30, 2021) ("A limitation of use is not the equivalent of a 'prohibition of access.'  Plaintiff could have continued to operate its restaurant under a 'limitation.'").

Second, the Complaint does not allege that authorities prohibited the Café from accessing the premises based on damaged property.  The Complaint describes business restrictions directed toward the spread of Covid-19, but the Civil Authority Provision applies if "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority . . . ."  The Café's does not describe measures taken by authorities in response

"damaged property" in the surrounding area, nor "in response to dangerous physical conditions . . . ."  There is no allegation that authorities prohibited the Café from preparing and selling meals from the premises for customer pickup or delivery.  The Café has not plausibly alleged that it was wrongfully denied coverage under the Civil Authority Provision.  This conclusion is consistent with authorities that have considered similar policy language.  See, e.g., Food for Thought Caterers, 2021 WL 860345, at *6-7 (civil authority provision did not apply where plaintiff failed to allege implementation of orders based on "risks of direct physical loss to property in the surrounding area" and "failed to allege that property in the surrounding area was physically damaged."); 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd., 2020 WL 7360252, at *4 (S.D.N.Y. Dec. 15, 2020) (Covid-19 closure orders did not give rise to coverage obligations because "the Civil Authority provisions address a factually distinct situation – when some dangerous condition on neighboring premises forces a shutdown of Plaintiff's premises.") (Schofield, J.).

The Complaint does not plausibly allege the Café suffered a loss covered under the Civil Authority Provision.  Because the breach of contract claim and claim for declaratory judgment are premised on the allegedly improper denial of coverage under this provision, those claims are dismissed.

III.   The Policy's "Virus Exclusion" Precludes Coverage.

Lastly, the Policy's Virus Exclusion states: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (Compl't ¶ 35 & Gonzalez Dec. Ex. A at p. 66 of 162.)

"The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co., 12 N.Y.3d 302, 306 (2009).  "'Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced.  They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.  Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.'" Id. at 307 (quoting Seaboard Surety Co. v. Gillette Co., 64 N.Y.2d 304, 311 (1984)).

The Complaint repeatedly describes the Café's business losses as a consequence of the Covid-19 pandemic.  It alleges that "Plaintiff's business closure [was] due to the COVID-19 pandemic" and that its business was "devastated by the impact of the pandemic." (Compl't ¶¶ 1-2.)  The Complaint alleges that New York City was "as hard-hit by COVID-19 as any other area in the world," resulting in tens of thousands of deaths, and that due to authorities' restrictions on movement and non-essential businesses, the Café "suffered a direct physical loss of use of its restaurant and resulting significant loss of business income . . . ." (Compl't ¶¶ 32-33.)  It proceeds to allege:

> [The Café's] loss of business profits should have been covered by the Policy because the COVID-19 pandemic is such a devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the "virus" exclusion in the Policy endorsement, and both Plaintiff's loss of use of its business property and of business profits constituted covered causes of loss under the Policy.  The current global catastrophe is much different from, for example, an episode of food poisoning affecting several restaurant patrons.  The COVID-19 pandemic is much closer to a natural disaster than a "loss due to virus or bacteria."  Importantly, Plaintiff's business closure was not the direct result of any COVID-19 infection or contamination in its restaurant, but as a result of

- 11 -

infections and contaminations in New York City and the
surrounding area that prompted the state's civil authority orders to
shutdown dining in Plaintiff's restaurant.

(Compl't ¶ 36.)

The Café urges that the Virus Exclusion is narrow because, unlike other similar
policies, its language does not exclude loss caused "directly or indirectly" by a virus.  (Opp.
Mem. at 20-21.)  It urges that the relevant language therefore has "causal ambiguities" that
cannot be construed on a motion to dismiss.  (Id.)  It also argues that the orders of civil
authorities were the efficient proximate cause of the business losses, as opposed to the Covid-19
virus itself.  (Id. at 21-22.)

The Court concludes that the Virus Exclusion is unambiguous and excludes the
coverage sought by the Café.  "[T]he issue of whether a provision in an insurance policy is
ambiguous is a question of law for the court to determine, and a provision in an insurance
contract is not ambiguous merely because the parties interpret it differently."  Atl. Mut. Ins. Co.
v. Terk Techs. Corp., 309 A.D.2d 22, 28 (1st Dep't 2003) (internal citation omitted).  The Café
has not identified an ambiguity in the Virus Exclusion, and the fact that authorities broadly
directed the shutdown of non-essential businesses does not demonstrate "causal ambiguities" in
policy language.  The Virus Exclusion is brief and straightforward, and provides that XL "will
not pay for loss or damage caused by or resulting from any virus . . . that induces or is capable of
inducing physical distress, illness or disease."  (Compl't ¶ 35 & Gonzalez Dec. Ex. A at p. 66 of
162.)

The Café's assertion that the Virus Exclusion ought not apply because of the
scope and severity of the Covid-19 crisis is without merit.  (Compl't ¶ 36.)  The exclusion
applies to "any virus" that induces or is capable of inducing illness, and is not, as the Café urges,

limited to small or routine exposures or incidents of on-site contamination.  (See Opp. Mem. at 21.)

To the extent that the Café urges that state and municipal shutdown orders are the "efficient proximate cause" of its losses, rather than the novel coronavirus, that argument does not place the loss beyond the Virus Exclusion, for the reasons persuasively explained by Judge Furman in 100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am., 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021).  In that case, the language of the relevant virus exclusion was identical to the one at issue here.  Id.  "'The efficient proximate cause of a loss is the cause that originally sets other events in motion,' although courts must not 'trace events back to their metaphysical beginnings.'"  Id. (quoting Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 48 (2d Cir. 2006)).  "The inquiry is 'whether the parties contemplated that the exclusion would apply in a circumstance such as that presented,' in light of 'the reasonable expectation and purpose of the ordinary business person when making an ordinary business contract.'"  Id. (quoting Album Realty Corp. v. Am. Home Assur. Co., 80 N.Y.2d 1008, 1010 (1992)).  "Here, a reasonable business person would plainly contemplate that an exclusion for losses 'caused by or resulting from any virus' would extend to losses caused by immediate efforts to mitigate a viral outbreak."  Id.

Therefore, in addition to the Complaint's failure to allege a covered loss, the motion to dismiss is separately granted because any claimed loss would fall within the Virus Exclusion.

IV.     The Café's Claim for Breach of a Duty of Good Faith and Fair Dealing Is Dismissed.

Count II of the Complaint asserts that XL breached a duty of good faith and fair dealing "by purposefully mischaracterizing provisions of its insurance coverage agreements so as

- 13 -

not to honor its contractual duties to Plaintiff and the Class under those agreements." (Compl't ¶¶ 54-59.) Because the Café has not plausibly alleged a breach of the duty of good faith and fair dealing, Count II will be dismissed.

Under New York law, "[t]he implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement. The implied covenant includes any promises which a reasonable promisee would be justified in understanding were included. However, no obligation may be implied that would be inconsistent with other terms of the contractual relationship." 1357 Tarrytown Rd. Auto, LLC v. Granite Properties, LLC, 142 A.D.3d 976, 977 (2d Dep't 2016) (internal citations omitted). When a defendant's actions are consistent with an agreement's "express and specific provisions," such a claim is properly dismissed. See id. In addition, a claim for breach of covenant of good faith and fair dealing may be dismissed as "duplicative" of a contract claim where "both claims 'arise from the same facts and seek the identical damages for each alleged breach.'" Netologic, Inc. v. Goldman Sachs Grp., Inc., 110 A.D.3d 433, 434 (1st Dep't 2013) (quoting Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D.3d 423, 426 (1st Dep't 2010)).

For the reasons already explained, the Complaint has not plausibly alleged conduct by XL that contrary to the parties' contractual relationship. Count II also is not premised on facts or damages that are distinct from the Café's breach of contract claim.

XL's motion to dismiss is therefore granted as to Count II.

V.      Leave to Amend Is Denied.

In a footnote, the Café requests leave to file a second amended complaint in the event that the Court grants "any aspect" of XL's motion. (Opp. Mem. at 25 n.17.) The Café

amended its complaint following the Initial Pretrial Conference and the receipt of XL's pre-motion letter addressing the Civil Authority Provision and the Virus Exclusion.  (Docket # 14, 34; Minute Entry, Sept. 24, 2020.)  The Café's request for leave to amend does not explain the basis for any amendment.  Leave to amend is therefore denied.

CONCLUSION.

Defendant's motion to dismiss is GRANTED.  (Docket # 37.)  The Clerk is directed to terminate the motion, close the case and enter judgment for the defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 23, 2021

- 15 -